UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,	**DECISION AND ORDER**

v.
	11-CR-00366-RJA-JJM
BRANDON JONAS,
                Defendant.
_____

        Before me is defendant Brandon Jonas' request [109] to have his former learned counsel, Donald Thompson, Esq., appointed as co-counsel to his current appointed counsel, Matthew Lembke, Esq. For the following reasons, this request is denied, without prejudice to both counsel agreeing to accept a reduced rate of compensation for their prospective joint representation of defendant Jonas.

**BACKGROUND**

        This case was originally commenced only against defendants Misael Montalvo and Carmen M. Justiniano Ramirez. Indictment [1]. On November 8, 2012, a Superseding Indictment was returned adding defendants Efrain Hildago and Jonas as defendants [68]. The Superseding Indictment charges defendants Montalvo, Hildago, and Jonas with two counts of discharging a firearm causing death in violation of 18 U.S.C. §§924(c)(1)(A)(iii), 924(j)(1), and (2). It also contains notices of special findings against these defendants pursuant to 18 U.S.C. §§2591 and 3592.

        At the November 15, 2012 arraignment on the Superseding Indictment, I appointed trial counsel and learned counsel to represent each of the three death penalty eligible defendants pursuant to 18 U.S.C. §3005 [75]. At that time, the parties also agreed to a

Scheduling Order [72], which requires defendants' pretrial motions to be filed by June 17, 2013. Id., 2.

After receiving notification on March 19, 2013, that the government would not be seeking the death penalty against defendants Montalvo, Hidalgo, or Jonas, I relieved learned counsel from their assignments [96]. Shortly thereafter, defendants requested re-appointment of their former learned counsel as co-counsel, and I provided them with an opportunity to make *in camera* submissions detailing why continued representation by their former learned counsel was necessary [97].[1] Only defendant Jonas has proceeded with his request to have his former learned counsel appointed as co-counsel [109].

In support of this request, Mr. Lembke filed an April 1, 2013 letter *in camera* and, at his request, I conducted an *in camera* proceeding with defendant Jonas and his former and current counsel on April 22, 2013 [107].

**ANALYSIS**

"[O]nce the government has formally informed the court and the defendant of its intention not to seek the death penalty, the matter is no longer a capital case within the meaning of §3005 and that section does not require the district court to continue the appointment of a second attorney." United States v. Douglas, 525 F.3d 225, 237 (2d Cir.), cert. denied, 555 U.S. 1033 (2008). This does "not preclude a district court, in its discretion, from maintaining the dual appointment . . . out of a concern for fairness at the trial of a criminal offense". Id. at 238.

---

[1] The government sought disclosure of Mr. Lembke's *in camera* submission. After providing the parties with an opportunity to brief this issue [99] and having considered their submissions [100, 105], I denied the government access to the submission [107].

"Deciding when, if ever, the retention of both counsel is necessary in the interest of justice after the government has announced it will not seek the death penalty is an exercise best left to the broad discretion of the district court." Id.

In exercising this discretion, courts have looked for guidance to the policy of the Judicial Conference of the United States, which states that "'absent extenuating circumstances,' once the government determines that a prosecution is no longer a potential death penalty case prosecution, the court 'should . . . make an appropriate reduction in the number of counsel' and 'reduce the compensation rate.' . . . In determining the existence of 'extenuating circumstances,' the Guide suggests the court consider '(1) the need to avoid disruption of the proceedings; (2) whether the decision not to seek the death penalty occurred late in the litigation; (3) whether the case is unusually complex; and (4) any other factors that would interfere with the need to ensure effective representation of the defendant.'" United States v. Kendrick, 2013 WL 1896982, *1 (W.D.N.Y.) (Feldman, M.J.), *pro se* objections overruled, 2013 WL 1896988 (W.D.N.Y. 2013) (Geraci, J.) (*quoting* Guide to Judiciary Policy §§630.30.20, 630.30.20(b), 630.30.30)).[2]

The Western District of New York's Criminal Justice Act Plan (revised June 18, 2010) likewise states that:

> "[i]f, following, the appointment of counsel in a capital case, it is determined that the death penalty will not be sought, the Court may consider the question of the number of counsel and the rate of compensation needed for the duration of the proceeding. After considering whether the number of counsel initially appointed is

---

[2] The Guide to Judiciary Policy also permits appointment of co-counsel "[i]n an extremely difficult case where the court finds it in the interest of justice to appoint an additional attorney, *each attorney is eligible to receive the maximum compensation allowable under the CJA*." §230.53.20(a) (emphasis added).

> necessary to ensure effective representation or to avoid disruption of the proceeding, the Court may continue the appointments or reduce the number of appointed counsel.
>
> After considering the need to fairly compensate appointed counsel taking into account the commitment of time and resources appointed counsel has made and will continue to make, the Court may continue to pay the previously approved rate, or prospectively reduce the rate." §XVI(C)(6)(a).

Mr. Lembke acknowledges that the decision not to seek the death penalty has come relatively early in this litigation, but argues that defendant Jonas has "developed a trust" in Mr. Thompson, and that this remains a complex case, both as a result of the substantive charge, a "federal double homicide", and due to defendant Jonas' characteristics [109]. Although I recognize that this case may be complex, I do not find it to be so unusually complex that the interests of justice demand two lawyers. Moreover, Mr. Lembke, is a highly capable attorney who meets "the more stringent qualifications for being assigned capital prosecutions in the first instance." Kendrick, 2013 1896982 at *2. Mr. Lembke also acknowledges that he has formed his "own independent" relationship with defendant Jonas, and that defendant Jonas has also developed trust with him. Therefore, I conclude that there are no extenuating circumstances to warrant re-appointment of Mr. Thompson as co-counsel.

Although I conclude that appointment of co-counsel is not necessary to ensure that defendant Jonas receives a fair trial, Messrs. Lembke and Thompson proposed at the April 22, 2013 proceeding that they were each willing to accept an unspecified reduced Criminal Justice Act rate to facilitate Mr. Thompson's appointment as co-counsel. This proposal, which stems from their concern for Mr. Jonas, is laudable and recognizes that "[a] substantial element of appointed counsel's representation under the Act remains public service". United States v.

Hildebrandt, 420 F.Supp. 476, 478 (S.D.N.Y. 1976); United States v. Mosley, 779 F.Supp.2d 398, 404 n. 10 (D.N.J. 2011) ("the purpose behind the CJA . . . was always pro bono in nature").

While not identical to counsels' proposal, the Guide to Judiciary Policy permits an appointed counsel to claim compensation for services furnished by counsel who is not a partner or associate, within the maximum compensation allowed by the Criminal Justice Act, so long as they receive prior authorization from the court. §230.53.10(b). Based upon the unique circumstances of this case, I conclude that counsels' proposal is acceptable, provided that they agree to *combined* compensation equal to the current rate payable to a *single* capital case counsel ($178.00/hour) under the Criminal Justice Act.

## CONCLUSION

For these reasons, I deny defendant Jonas' request [109] for appointment of Mr. Thompson as co-counsel, without prejudice to Messrs. Thompson and Lembke agreeing to accept a combined hourly capital rate equal to the current rate payable to a single counsel under the Criminal Justice Act for their prospective joint representation of defendant Jonas.

**SO ORDERED**.

Dated: June 5, 2013

                                /s/ Jeremiah J. McCarthy
                                JEREMIAH J. MCCARTHY
                                United States Magistrate Judge